(101 South. 405)

No. 26549.

### BELLAMORE v. HUMPHREYS.

(June 27, 1924. Rehearing Denied by Whole Court Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

Divorce ⬥133(3)—Evidence held to establish abandonment of matrimonial domicile by wife.

Evidence *held* to establish abandonment by wife of matrimonial domicile, and her refusal to return on request of husband, and on formal demands pursuant to Civ. Code, arts. 143, 145.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by Nicholas Bellamore against Laurence Humphreys for separation from bed and board. Judgment for plaintiff, and defendant appeals. Affirmed.

William Winans Wall, of New Orleans, for appellant.

F. F. Teissier, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. This is a suit by the husband for separation from bed and board on the ground of abandonment. The wife denied that she abandoned her husband, but refused to return to the matrimonial domicile and asked for a judgment granting her a separation from bed and board on the ground that their living together as husband and wife was insupportable, due to excesses, cruelty, and outrages committed by her husband against her.

After a trial on the merits, judgment was rendered in favor of the plaintiff as prayed for, and rejecting the demand of the defendant in reconvention.

The suit was filed December 15, 1922, and was followed by the service of the first summons on the wife to return December 21. The answer of the wife denying abandonment and praying for a separation in her favor was filed February 9, 1923. The other two reiterated summonses were served from month to month after the filing of the answer. These summonses were followed by a judgment ordering the wife to return to the matrimonial domicile. The judgment was signed on May 9, 1923, and a copy thereof was served from month to month for three consecutive months.

The first question presented is whether

there was any abandonment without lawful cause within the purview of the law which would justify a decree of separation in favor of the husband. If there was such abandonment, then that disposes of the entire case, for counsel for defendant in his brief expressly disclaims any plea or defense of justification for the abandonment. He says:

"Therefore it is plain that the defense is a flat denial of any abandonment of the plaintiff by the defendant and not as argued by counsel, the justification of an abandonment."

The articles of the Civil Code, which authorize a separation from bed and board between husband and wife on the ground of abandonment, and which provide an exclusive method by which said abandonment shall be established, read as follows:

"Art. 143. Separation grounded on abandonment by one of the married persons can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed. * * *

"Art. 145. The abandonment with which the husband or wife is charged must be made [to] appear by the three reiterated summonses made to him or her from month to month, directing him or her to return to the place of the matrimonial domicile, and followed by a judgment which has sentenced him or her to comply with such request, together with a notification of the said judgment, given to him or her from month to month for three times successively."

It is not pretended that the requirements laid down in the foregoing articles of the Code were not literally complied with by the plaintiff. It is contended, however, that, notwithstanding the observance of the legal formalities by which abandonment is made to appear, there was in fact no abandonment, for the reason that the absenting of the wife from the domicile, and her refusal to return after being requested to do so by the husband, and after being summoned and ordered to return by the court, had a lawful cause, to wit: That she was suffering from an extensive bilateral tuberculosis, and left the matrimonial domicile and went to a little home of her own in the piney woods at Mandeville, on the advice of physicians, and with the consent and approval of her husband.

The plaintiff and defendant were married in October, 1920. Each of them had been married previously, and each had daughters by the prior marriage. The honeymoon over, the connubial relation was agreeable and pleasant for a while—possibly a little over a year. They had the comforts of a nicely furnished home on St. Charles avenue. The wife was provided with a cook, a seamstress, a washerwoman, a house girl, and a gardener. From the date of the marriage up to, say, February, 1922, she had an allowance of $75 per month for her personal use, and thereafter she was permitted to open an unlimited charge account with the different department stores of this city, and her personal bills averaged over $100 per month.

There is no pretense that, during this period of something over a year, there was any serious disagreement or dissension of any magnitude or any cause to justify the wife in wanting to abandon the matrimonial domicile or to cease her marital relation with her husband.

About May, 1922, it was found that the defendant was suffering from what the physicians called a very aggravated case of bilateral tuberculosis. As we gather from the evidence, it was about this time that the trouble began which ultimately resulted in a desire on the part of both parties for a separation. The mother of the defendant, without the knowledge of the daughter, suggested to the physician that it would probably be best for her daughter to go to Mandeville, where they owned a small house, to take the treatment of rest and quiet, and this suggestion had its effect and was carried out. There is some conflict between the testimony

of the defendant and her mother, on the one hand, and that of the two physicians, on the other, as to whether the physicians advised the necessity of the removal to Mandeville. The testimony of the physicians in part is as follows:

### Dr. Rocquet.

"Q. Do you recommend to all your patients to go to the country, who are afflicted with tuberculosis? A. It is not necessary.

"Q. Isn't it a fact that climatic conditions are not the guide in the treatment of tuberculosis? A. In my opinion, it doesn't count for much."

### Dr. Bernhard.

"Q. And what did you tell her to do? A. I told her that there was one of three things that she could do: Either go to a sanitarium, or go across the lake if she felt disposed to, or remain in New Orleans, and do as well here as she could any place I knew of, as far as climatic conditions are concerned.

"Q. Which one of these three did you recommend? A. I didn't recommend any particularly. I told her at that time that contentment was the most important factor in the treatment of this condition. I also impressed her with the fact that she could do as well in New Orleans as she could any other place I knew of."

We think it very clear that the physicians did not peremptorily order the defendant to go to Mandeville, nor did they advise that it was necessary for her to go to the country to get the proper rest or treatment for the disease from which she was suffering. On the contrary, the defendant was given to understand that she could be treated as well and would fare just as well here in the city. The removal to Mandeville was at the suggestion of the defendant's mother, and of her own volition, and was simply acquiesced in by the physicians.

It is true the plaintiff made no protest, but acquiesced in the change, and continued to provide for the comforts of his wife while at Mandeville by sending her as much as $25 per week. In the course of time some correspondence passed between the plaintiff and his wife, and his wife's mother. In concluding his last letter to his wife under date November 29, 1922, the plaintiff said:

"I do not care to go into further details at this time, I simply repeat: Return to the home you have left without necessity six months ago, where you will find the house you will be willing to assist in creating and maintaining, as I am always willing, as in the past, to do my share, notwithstanding the stumbling blocks that may be thrown in the way. I hope you and your children are well."

The defendant persisted in remaining at Mandeville, and in refusing to return to the matrimonial domicile.

We think the testimony fully justifies the conclusion that the defendant intended to abandon and did abandon the matrimonial domicile, and had no intention of returning when she decided to go to Mandeville, and that the opinions of the physicians were seized upon by her as an excuse or justification for leaving and for not returning. But be that as it may, it is wholly immaterial under what conditions and with what intention the defendant left the matrimonial domicile and established one of her own at Mandeville; the fact remains that she constantly remained away, refused to return without sufficient reason or justification, though frequently requested to do so by her husband, this request having been followed by the summonses and the order from the court.

The case clearly falls within the terms of article 143 of the Civil Code, in which the defendant has withdrawn herself from the common dwelling without a lawful cause, and has constantly refused to return to live with her husband.

As we have already stated, the defendant does not attempt to justify the abandonment of her husband, and urges only the cruel treatment and outrages which she claims her husband was guilty of towards her, as grounds for a judgment of separation in her favor. From the views we have expressed, it

becomes unnecessary to consider the claim of the defendant.

The judgment appealed from is affirmed at defendant's cost.

Rehearing refused by the WHOLE COURT.